on behalf of the United States. May it please the Court, I'd like to reserve two minutes time for rebuttal, if I may. You have a clock upon the view, and one that we've got left. Thank you. The jury found the defendant, Robert McGowan, guilty of two counts of deprivation of rights in this case, and Judge Real erred when he granted the defendant's motion, Rule 29 motion, and dismissed those counts, based on the fact that the injuries were not sufficiently severe to constitute cruel and unusual punishment. Am I right that his decision had nothing to do with the identity of the attackers? That is how it appears. Only sufficiency of injuries. What happened to Ramos and Flores? Just so I have some context. With respect, both Ramos and Flores were charged in the conspiracy count, which was the first count of the indictment conspiracy to obstruct justice count, as well as each of them was charged with different counts, substantive counts, of obstruction of justice. At the close of the government's case in chief, the court, the district court, granted the defendant's Rule 29 motions, both of them on the substantive count, but left the conspiracy count for the jury to deliberate on, following the jury's verdict of guilty on both those counts with respect to those two defendants, the court granted the motion for judgment of acquittal on that count. So Ramos and Flores disappeared also? That's correct. And you appealed both of those cases? We did not, we have not appealed with respect to Defendant Ramos and Defendant Flores. Well, that's why I'm curious. Codefendant's companion appeals, Ramos and Flores, were voluntarily dismissed? By the government. They were initially appealed in the middle of all that. Well, that was my question. You did appeal. I'm sorry, we did initially appeal, and then we did not pursue that appeal with respect to the conspiracy count. Why? That decision was made after the various levels of review within the office and within the Department of Justice all the way up to the Solicitor General's office. Okay, so we're allowed to come down. Correct. Assume that we were to agree with you just for the sake of discussion. Have you asked us to send this back to a different judge? Do you have any trepidation if we were to rule in your favor about going back to the same judge? Well, Your Honor, I'd probably revisit that issue with my office, but I'd have to research the grounds that would allow for such a thing. That decision has not been made. Okay. Judge Reel's focus on just the nature and severity of the case. Tell me if I've got this right. When you get past some of Judge Reel's rhetoric where he talks about how he's the 13th juror and this should have been prosecuted in state court, is the legal question here whether you need significant injury as well as malicious and sadistic use of force to amount to an Eighth Amendment violation? And the answer is Hudson v. McMillian? Well, first of all, with respect to Judge Reel's comment, if I might respond to that, as to being the 13th juror, it appears that he was applying the wrong standard. This was not a motion for a new trial, and he should not have been applying that standard in terms of weighing the evidence supporting the verdicts. The standard should have been viewing the evidence in light of the most favorable to the government, whether any rational trial or fact could have found the essential elements beyond a reasonable doubt. The Hudson v. McMillian, I think, is the controlling authority. It's the element at issue. I think you might have ‑‑ I might not have made my question clear to you. Is the legal issue whether you need significant injury and the legal answer under Hudson is no? Correct. And is that all there is to it? Yes. That's the case? Well, yes, because it appears that Judge Reel dismissed the count solely based on ‑‑ It's not quite all there is, because if I understand correctly, the defense is taking a position of appeal of insufficient evidence, and in part it's insufficient evidence in the sense that there was not sufficient evidence of serious enough injuries as to both of the victims. That's correct, Your Honor. So there's a little more to it. That's correct, Your Honor. And let me withdraw that. I was focusing on, I guess, Judge Reel's rationale, and that was the initial rationale, but that's correct. But you agree, I think, that we can sustain his decision on any ground that's supported by the record. It's argued, and you also agree, I think, that the opposing counsel did argue the point of whether there was sufficient evidence of injury, right? Yes, that's correct. And because of that, the government must address that with respect to the sufficiency. Does the Court have particular questions on that? Go ahead. Well, there are two victims, and I get the names confused, I don't know why, but on one it seems to me that the argument was simply the victim testified, but it wasn't credible because he changed his story. And I think that is the weaker claim. The other one, though, is a little dicier, and I should probably figure out the name, where the actual evidence of actual injury by this defendant is a little thin. Do you want to speak to that? Are you referring to the issue of identity with respect to the sufficiency on the identity there? Right. Whether he's identified as the one who, I mean, obviously the guy got injured sufficiently if the guy, the victim got injured sufficiently if we can pin it on or it was sufficient to pin it on McGowan. It is the identity that those injuries are attributable to McGowan that is a little dicier. Right. I think the stronger account the Court is referring to is with respect to inmate because he specifically identified the defendant McGowan as being the one who yanked him up off the floor and then repeatedly punched him, slammed his head against the wall of the facility and socked him in the face numerous times. I think the weaker account that the Court seems to be referring to is with respect to inmate Villa, who was not able to identify defendant McGowan as one of the two transporting officers and he described that officer as being, those two officers as  And the other one was the one who was in the car with the victim and sent him flying headfirst to the cement pavement. That's right. That's exactly right. I'm sorry. I have enough trouble keeping the part of the same story. Did he say it was McGowan or did he say he was facing the other way and couldn't see who it was? He did not say that it was not McGowan. He did identify an officer being involved in yanking him out of the van that was one of the two transporting officers and he described that officer as being, those two officers as being one Mexican in appearance and one Italian in appearance, whereas defendant McGowan is neither. And so it appears defendant's argument is based on the fact that that's then a misidentification. What did you have, what evidence was there to show that McGowan was the guy that did it to Villa? Well, first of all, defendant's own testimony put defendant McGowan as the officer who took the first at least three, perhaps four inmates out of the van. In addition, officer Freeman saw defendant and testified to this, saw defendant McGowan yank the second inmate who other evidence established was inmate Villa. So you had evidence that Freeman testified that he saw McGowan yank Villa out? Right. Okay, that's what I wanted to know. Well, he saw him yank the second inmate who evidence established was inmate Villa. You got other inmate that makes the second one Villa? Correct. So you had evidence that McGowan hauled Villa out of the truck and threw him down? Yes. Okay. Was McGowan convicted of conspiracy? He was. So all three were? That's correct. Are the acts of one conspirator visitable on the others? Was that a theory that you used? I believe one. Conspirators are usually responsible for the natural and probable consequences of the behavior during the conspiracy. Was this one large event when all this happened pretty much at the same time? Well, yes, although the obstruction of justice acts were two different acts within the substantive counts that then gave rise to the conspiracy. Let me get back to the acts attributed to McGowan. So we managed to pin on him pulling Villa out roughly and having him fall to the floor, right? But how is a pull any different than a shove? And Hudson seems to say that a shove is the minimus. Well, this was not the – there was no reason, there was no justification for yanking him from the shirt and throwing him to the cement head first. So it's not the yanking that you're prosecuting on. It's the throwing him down on his face on the ground. Well, it's both together. Obviously, if it was just a small pull to get the inmate on the band. Oh, you mean you want us to adjudicate yanking and say yanking is different from shoving, yanking independently can be cruel and unusual punishment? It depends on the force applied in the yank or the shove and all that goes along with it. And in this case, it was a yank to throw him head first to the concrete, not just a pull him in gently. I don't get it. Is there a problem with your case on throwing him head first on the concrete? No. You mean the yanking? No. Either way, if it had been a push to throw him head first. There was no throwing in the sense that he – if I understand correctly, what happens is he is getting out, he yanks him, and the yank causes Virya to get unbalanced and fall to the ground. It's not like he's slamming against the ground. There's no evidence of that, is there? Well, no. But the evidence was that it was a yank to throw the inmates out of the band. In fact, there was evidence that the first inmate, that McGowan had dragged the first inmate out in the same manner, causing him to lose balance. And Freeman testified that that inmate wouldn't have been able to break his fall. Let's say we were to conclude that the yank wasn't enough. Were you able to pin anything else on McGowan? Well, with respect to inmate Virya, he's not able to identify McGowan as participating in the further assaults on him specifically. And nobody else does, right? With respect to inmate Virya, that's correct. I'm starting to understand why Judge Reel threw you out. In your responses, it sounds to me as though what you're arguing is a negligence case against McGowan, that he didn't yank the man carefully enough, rather than an Eighth Amendment case that he applied force maliciously and sadistically to cause harm. No, Your Honors. There was evidence to establish that it was maliciously and sadistically for the very purpose of causing harm. There was evidence introduced that there were statements made about retaliating against these inmates. These inmates had been identified as perhaps being involved in assaults on staff earlier in the day. But 10 to 14 hours had passed, and there was undisputed evidence that they were not disruptive and were completely compliant in the drive over and upon arrival to the administrative segregation unit where Defendant McGowan met them. There was evidence that the mood was agitated. There was a lot of shock and anger. Defendant Ramos had made comments that these bastards need to pay in anticipation of the van's arrival. The defendant admitted having conversations about past staff assaults and how this was the most brutal one, and his actions. But what did he actually do? People can have a lot of feelings. What did McGowan actually do, if all your evidence is believed, that amounted to malicious and sadistic effort to cause harm? He grabbed fully shackled inmates who were unable to break their falls and grabbed them in order to pull them from the van to throw them headfirst to the concrete. They had leg shackles on? Yes. Did they also have handcuffs? Yes, their wrists were shackled to their waist joints. So their legs were restrained and their arms were to their bodies. Correct. Now, following up on just Todd's earlier question, are you taking the position that he can attribute any of the conduct of the other officers to McGowan under a conspiracy theory? That the way you get, I mean, this again follows up on the question of whether the fulling and shoving is enough. And this is, let's say we were to conclude it's not enough. Is there anything else? And you said, well, he wasn't identified as having done any of the kicking or anything else. Are you taking the position that even if he was not personally identified as doing the kicking, that under a conspiracy theory, the kicking that was done by other officers, other members of conspiracy, would be attributed to McGowan anyway? Well, it was not charged as a conspiracy to violate 242, the deprivation of rights. So there was no instruction to the jury that the acts of one conspirator are attributable to the other? Not with respect to the 242 counts, no. Okay. I must have misunderstood your earlier answer to just Todd. Remind me what 242 was. The deprivation of rights counts, the counts that for the. So what was the conspiracy? The three defendants were charged with conspiracy to obstruct justice for their acts. For cover-up. For cover-up. For cover-up accounts. So there were two substantive obstruction of justice counts. I understand. But there was no conspiracy. And the cover-up, of course, would have nothing to do with the. There was no conspiracy to brutalize the. Correct. There was no such charge. Okay. All right. Thank you. How can you attribute Ramos' comments about these bastards have to pay to McGowan? Well, that came in as evidence that McGowan was in the vicinity when, as being rounded up as one of the officers to greet the van, and that he would have heard those comments that the whole mood of the officers that were awaiting the arrival of the van was. If you don't have a conspiracy, you know, he could have been sternly disapproving of fellow officer makes a statement like that. And for all we know, McGowan would have thought to himself, boy, that's a terrible attitude. I certainly don't agree with that. But, you know, didn't bother to contradict him. But how can we possibly attribute Ramos' state of mind to. Sure. I guess I was. I saw the same thing that you when you were talking about Ramos, that we're attributing Ramos' statements to McGowan. But that's before I understood the distinction between the 242 and the obstruction count. Declaration of one conspirator is attributable to another in the furtherance of the conspiracy. But I don't see how that ties in. You keep telling me there's no conspiracy here to violate 242. Well, that's correct. It wasn't charged that way. But that evidence still is relevant to considering whether or not the use of force, that is, McGowan's throwing inmates, fully compliant inmates, shackled inmates out of a van to the concrete, whether or not that use of force was a legitimate and justifiable use of force in the effort to maintain and restore discipline as opposed to the use of force that is unnecessary and a wanton infliction of pain. Well, you say it's relevant, but I guess I'm having trouble understanding how it's relevant. I mean, somebody else makes a statement. You know, just to give you an analogy, often my colleagues on the bench make statements or ask questions. And I, not on this panel, but I sometimes disagree vehemently with them. I think it's really totally they're barking up the wrong tree. But, you know, I don't contradict them. I don't say, gee, Judge X is asking a dumb question. You know, we all do our job. Why is McGowan somehow saddled with what another angry officer says in his presence? Does he have a duty to say, no, no, no, I disagree with that? You know, you're not talking for me? It's not a matter of that. It's a matter relevant for the jury to determine as to whether or not these prisoners, who had no injuries prior to, and this was undisputed evidence that was introduced, had no injuries prior to being transported over to the administrative segregation unit, sustained the injuries that they had upon their entrance into central facility that were witnessed by officers who testified as a result of an accident or as a result of purposeful, you know, intended acts by the defendant to cause those injuries. So it's relevant to that point. I am being dragged in the wrong direction by your argument. I thought this was a real simple case of did McGowan just pull the guy out of the truck and the guy fell or did McGowan throw him on his face? If he threw him on his face, that's enough to get to the jury and the significant injury doesn't matter because of Hudson. I thought that's all it was. But now it sounds as though you need so much to win. For example, if some other, this doesn't seem to be a racial guard. I looked at the pictures and they all look white, at least to me. But suppose it was. Suppose some other guard is a racist and he makes a nasty racial comment. And a guard who wasn't a racist at all is accused of mistreating a prisoner. It sounds as though any other guard's nasty comment comes in. And then it sounds as though you don't need to prove that the guy threw him out of the truck onto his face. All you have to prove is he wasn't careful enough. And all of a sudden it's turned into a negligence case with a bunch of extraneous evidence. I don't understand why we're going this way instead of the easy way. I think it is. I mean, I believe it is the easy way, Your Honor. I guess I'm not sure why. No, no, you're not allowed to prove these people are a bad bunch or these people are sleazy. You have to prove this guy did a bad thing. That's correct. And the evidence at trial from Villa's testimony and Freeman's testimony with respect to how Villa was taken out of the van by what other evidence established must have been Defendant McGowan in spite of Villa's potential misidentification as to one of his assailants established that. Was Ramos's statement limited by any instruction from the judge to Ramos himself? Or did it come in as to everybody? It came in as to everybody. I don't believe there was a limiting instruction with respect to that statement. Was there an objection? I'm sorry? Was there an objection? I don't believe there was. I haven't reexamined the record with respect to that particular statement. Were you a trial counsel? Yes, I was a trial counsel with another assistant U.S. attorney. Okay. Thank you. Thank you. Good morning. I am Russell Cole of D.C. Law School. On behalf of Defendant and Appellant for Appley, Robert McGowan. Your questions have made a mess of my outline, so I believe Hudson is – We apologize for messing up your outline. Help me on something here. I believe Hudson has set the standard. I believe that you don't have to have a significant – Okay. You concede that you don't need significant injury. Especially with Waller. Waller says that McGowan socked him in the face several times with a closed fist. McGowan is 6'5 and 300-plus pounds. If you sock him in the face several times with a closed fist, I'm not going to try to tell you that's not wanton infliction of cruel and unusual punishment. So what's your point? My point is two. One is to Villa. I agree. Villa, there seems to be no real evidence that McGowan hurt Villa. What do you mean real evidence? Any. There's no evidence. There's no evidence to support – I couldn't at jury infer from the fact that McGowan was mad enough to punch another guy, the other prisoner in the face, that McGowan had some animus and wasn't just gently trying to haul him out of the truck and, oh, my, that fellow fell. Poor fellow. I believe as you were discussing with Ms. Curtis, animus is not something – he could be guilty of animus. Well, the words of the Supreme Court are maliciously and sadistically. So it does seem to go to how McGowan felt. And if McGowan was acting maliciously and sadistically to cause pain, beyond that necessary to accomplish the legitimate purposes of the prison, then that's enough. So if there's evidence from which a jury could infer that, direct or circumstantial, it gets to the jury. And we went down a whole bunch of rabbit tracks in the previous argument. I still don't quite understand why there isn't enough to get to the jury on whether McGowan acted maliciously and sadistically because of circumstantial evidence. I think I tend to agree with you. The issue of whether it was malicious, if you find that McGowan took a man out of the van and threw him to the ground or – We don't make findings. We look where you are. We have to decide whether there's enough so a jury could find that if they wanted to. We look at the facts in the light most favorable to the jury verdict. And you put yourself in the position of a reasonable juror to determine whether you could find beyond a reasonable doubt that certain things happened to wit that McGowan hurt these men maliciously and sadistically without a proper purpose. So if you find that he took the out of the van and threw him to the ground, not that he stumbled, but he threw him to the ground, I don't think we need to look at circumstantial evidence to find animus. If you find that he punched Waller in the face – You're applying the Jackson test, right? As I understand it, it seems clear that what you are to do is to determine whether there is evidence from which a reasonable juror could find beyond a reasonable doubt that this crime had been committed. I think Jackson used the word any reasonable juror. Other than that, the words are the same. This is an interesting intellectual exercise, whether you gentlemen have to push yourself in the position of any reasonable juror or a reasonable juror. The question, I think, to get to your point about animus, if you believe there is evidence from which a reasonable juror could find that he threw him to the ground and shocked him in the face – Why couldn't a reasonable juror conclude that force was applied maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline? To whom? Are we talking about Villa or Waller? Both. Let's talk about one at a time. As for Villa, there is simply no evidence that McGowan did these things other than Freeman saying he saw McGowan pull him out and he stumbled. McGowan testified that without contradiction as to what he was doing, that he was in a hurry, that he realized there's a danger. You've got to get those guys out of the line. Okay. So what you've got, you've got Freeman who basically identifies McGowan as the guy that pulled him out. I think McGowan's right. But he doesn't make any more of the case. You've got Villa testifying – what did Villa testify to? Villa testified that there was a New Mexican or Italian guy who rode in the van with him who got out and – Wait. We're past identity now. Freeman is enough so that the jury could think it was McGowan. Correct. What did Villa testify that whoever took him out did to him? I believe he testified he threw him to the ground, face first onto the ground. That sounds like evidence. Right. Now, if a jury believes Villa and they disbelieve Freeman on whether Villa stumbled, they believe Villa on whether he was thrown to the ground, why couldn't some reasonable juror conclude that it was malicious and sadistic? Some reasonable juror did. Twelve of them did. The question is whether you are going to conclude that. And I think that if you look at all the testimony, Freeman clearly says he stumbled and got caught by the next guy. We've got 15 jurors now and the three outvote the 12? I thought we'd just look at whether any reasonable juror could so conclude. And if they could, it's up to the jury. I understand that the government bears the burden of proof of convincing you folks here that looking at it under that intellectual construct of a reasonable person, do you find that a reasonable juror could find beyond reasonable doubt? Again, this is an individual. Why couldn't he? I mean, it seems to me that implicit in your argument is the notion that it has to be proved without and independently of the testimony of Villa. But I don't see why. If Villa testifies, they can believe Villa. They can and they did. The question is we look at the facts in the light most favorable, not de novo. I understand. Well, it is. In the light most favorable, it would appear that the jury verdict is supported. Why not? Unless it is to convince you, then what are we doing? If all we're going to say is could a juror sitting in Judge Reel's court do it, well, 12 of them did. So that ends the question. That's the standard of review. You're setting up a little bit of a straw man. We take a look at the facts and decide whether in the light most favorable to the verdict, whether it's supported by substantial evidence. I believe there is no substantial evidence. There is no substantial evidence from which you could find beyond reasonable doubt that Robert McGowan knowingly and intentionally hurt Villa. All we have is that he yanked him out of the van. And McGowan's testimony is undisputed as to why he did it, why it was proper to do it. And she stumbled and Freeman says he got caught. Villa later on saying, oh, he threw me to the ground, is ---- Well, the jury resolved that dispute. And in rape cases all the time. Defendant says she consented. Complaining witness says I did not consent, it was forcible. And the jury can believe the defendant and they can believe the complaining witness. Here, why isn't Villa just like any other complaining witness? The jury can believe him. Well, because he's not like any other complaining witness. Clearly there is hostility between these folks. So what? That's for the jurors to decide. We're an appellate court. It's a whole different thing. As I understand it, the courts also ---- You can impeach him for bias and interest and all kinds of stuff. The few cases that possibly might be in our favor suggest that you are not to make inherently improbable inferences and you're not to make specious inferences. It has to make sense to you. What's improbable? What is improbable is that Villa somehow thought that an Italian or Mexican guy who rode with him in the van did it when in fact the evidence ---- they want to say, oh, no, the evidence shows that it was actually a 6 foot 5 inch Irish guy who was standing outside the van. That's inherently improbable to believe Villa's story. But Freeman says it was McGowan. Well, Freeman says McGowan pulled him out, which McGowan agrees he was pulling the guys out. That's undisputed. Let me talk about Waller. That sounds like a whole different approach to criminal trials and civil trials if you have prisoners involved. It may sound like that. I don't think this is the place to debate that with you. I've got 90 seconds left. I want to make a point about Waller. Look at Exhibit 15 and Exhibit 18. Exhibit 15 is a photograph taken of Waller soon after the incident. He testifies on October 10th at page 10 and 11 of the transcript. But that's a picture of him taken while he is still shackled to him being brought in. He doesn't have the injuries he has in Exhibit 18 taken the next day, where Waller for 10 months cannot identify McGowan, a guy he knows because he guarded Waller in the hole. Waller knows him. The day he can't identify him. A month later he can't identify him. Ten months later he says, oh, I got my head slammed into the wall. It's inherently improbable that when you look at Exhibit 15 and he does not have that injury on his head, the next photograph he took after he had a chance to go bang his head against the wall and get himself an injury, now all of a sudden he's got injuries on his head. It's inherently impossible. Why isn't that for the jury to decide and decide that he's a liar? It is. It was. But as I understand it, we are here now to determine whether you folks again looking, pardon me, I mean no disrespect by calling you folks. I like being called folk. Go ahead. He's a folk singer. That's me. It's an interesting intellectual exercise that I'm not making a closing argument to you folks. I'm somehow making some other argument. It sounded like a closing argument. I understand. I was at a jury recently, and you sounded just like that guy. So he was good, huh? No. Look, the only evidence, I believe that the only evidence is this. It is a good argument. It really sounds solid to me, but I just don't, but juries are free to believe things that I don't believe. There's justice and there's law. Judge Reel would not even give the jurors written instructions. He read them, the federal conspiracy instruction, one time only, and now Robert McGowan's fate is left in the hands of those 12 people. The judge took a six-day trial. That's another thing I don't like. I think judges ought to give 12 Xerox copies of the instructions to the 12 jurors, but a lot of them don't, and it's legal for them not to. I agree with you. They don't have to do what I like. I agree with you. And so, yes, we have to assume that when he read it to them once at 5 o'clock in the afternoon, the next day those 12 people remembered what it took and what a reasonable doubt was. Unfortunately, we can't go back and make Judge Reel do it the way I would have liked him to do it. Did you ask Judge Reel to give him printed copies of the instructions? I was not trial counsel. I was a second jury. I believe we asked, and I believe he said no. He always agrees with all requests, Judge Reel, doesn't he? He likes to do it your way. He's very open. Judge Reel, as far as I'm concerned, did not even acknowledge my presence when I argued in front of him on the jury instructions. He didn't even say yes or no. He said nothing. But I'm not here to discuss Judge Reel. If you look at the evidence, Waller is inherently improbable. It is beyond reasonable. Reasonable comes up twice. You have to have reasonable jurors and it has to be beyond a reasonable doubt. You cannot reason your way to believing beyond a reasonable doubt that Waller got socked in the face several times by a giant man who was mad at him and had no injuries, and then later, afterwards, you look at photograph 18, after he's had time to get in his cell and bang his head against the wall, now he has injuries. Same with Villa. Look at the pictures. I'm sorry I don't on my notes have the number of the photograph of Villa. Again, he has a cut on his chin. He goes and makes it worse. It gets worse. At some point, no matter how we slice up this intellectual pie, at some point you folks have to decide. Where are these photographs? Pardon me? Where are these photographs? The one with Waller is exhibit 15 and 18. Do you have an excerpt? Oh, here we go. Is this Villa? Is this? Exhibit 15. Do you have the excerpts over there? I do not, Your Honor. You didn't bring the excerpts of record to court? I grabbed the transcripts from my office, not the excerpts, and I got here today. In fact, the counsel was nice enough to let me check her excerpts to make sure that I'm getting what I'm talking about. Are you accustomed to coming to court without? I'm not accustomed to coming to court without the evidence. Did Waller explain the lack of interest in the photographs? I don't believe so. Was he asked to explain them? I mean, it seems to me, as a trial counsel, where a guy said I was beaten to a pulp and I was black and blue, that you'd show him a photograph and say, Is this a photograph taken contemporaneously with the event? Does he show any interest? Is that correct? As I stand here today, I would assume that was done, as you would assume that was done, but I cannot tell you that I know it was done. Trial counsel was confident. I assume they did. I think, though, when you look at it, it's clear that Waller has injured himself. He knew McGowan. He testified he knew McGowan, and for 10 months he was asked, Who did this to you? And until 10 months later, he couldn't come up with it. That is just not reasonable. Yes, there is evidence from Waller. This is 15 and 18 of the three exhibits? I believe, yes, Your Honor. The guy has an L.A. tattoo on his chest. If you're looking at the right one, he's a shaved-headed white guy with an L.A. Dodger logo tattooed on his chest. Yeah. And if you look, on the number 18, there's a big, huge injury on his forehead that would be consistent with being slammed in a wall, but that wasn't there when this picture was taken in 15, soon after the incident. How do we know that 15 came before 18? Because at page 10 and 11 of the October 10th transcript, Waller testifies on direct examination that that picture was taken soon after the incident while he was still shackled. And how much later was the other one taken? According to Waller, he said it was taken the next day, the 10th of May. We all know that inmates sometimes injure themselves, and that happens, and then they claim the guards did it. We also know that injuries sometimes right after the accident don't show up until the next day. I don't know how to sort that out. I believe you have to assume that if someone got their head slammed into the wall hard enough to make the injury you see in 18, it would have shown up in 15. You would have had immediate bruising. Minutes later, you would see something. You could be right. I'm inclined to agree with you, but I'm not on the jury. And the Jackson standard is so indulgent of juries, I just don't see how we can do it. Standard review becomes a very important issue up here. You probably know that. And frequently, trial lawyers don't quite appreciate that until they get hit in the head with it, and the bruise doesn't show until tomorrow. Well, what I understand is that, again, sooner or later, what we're asking you folks to do is read something and try to figure out what someone would have done when they heard it. It's possibly an impossible intellectual exercise, and I can't help but come in and make again the closing argument to try to convince you as one person to another that it's improbable. I did not find the case that says, yes, even if a victim testifies he's got hit, if he's just so unbelievable, you can discard him. But I think that's ultimately what I'm asking you to do. If you look at the totality of the circumstances, Waller and Villa simply are not reasonably believable, given all of the evidence. Why couldn't a jury have thought, well, the prisoner, of course, is a liar, and he wants to make money, so he was gilding the lily by injuring himself. But we believe that McGowan did, in fact, punch him out. Why couldn't a reasonable juror think, yep, McGowan beat him up, but when he went back to his cell, he was afraid it wouldn't show enough for his lawsuit, so he gilded the lily by inflicting on himself an unnecessary injury. I don't know that they – I guess they could have. I would assume. I don't know that they could have. Why isn't that enough under Jackson? Why is it not enough that if the victim is believed to have been falsifying evidence, that is not enough to convict the defendant? Yeah. When a person – a jury is told that if a person testifies falsely in some respect, they can infer that he testified falsely in all respects, but they don't have to draw that inference. It's up to them. Right. That's the usual falsest and omnium instruction. I understand. I don't understand your question, then, I'm afraid, because I would assume that the instruction was given. It wasn't given to the jury in writing. Let's hope they heard it when Judge Reel rattled it off to them along with all the other instructions, but I would assume they could, and I would assume also that you could. Is that not subsumed under reasonableness? If it is, are you not allowed to take into account who these men are, why they might want to? I realize credibility is for the jury to determine, but at the same time, how do you determine? Aren't you not ultimately judging the credibility of the evidence? I don't think I'm answering your question, unfortunately. Thank you. Okay. Thank you. Would you like a minute for rebuttal? Thank you. I just want to clarify a couple of facts that I think were perhaps misstated. With respect to the pictures of the incident, there are two pictures in the excerpt of Waller. One was taken immediately following the assaults on staff earlier that morning, about 10 or 14 hours earlier. Okay. Now, which one is that? You're telling us this is a photograph that's pre the attack that we're talking about? Correct. That's the picture that depicts no injuries. Which one is that? I apologize. I do have the excerpts, and they are sitting in my little sheet. Why don't you go with the rabbit? You can't tell us something like that and then not tell us which one it is. Then what do we do, go on a snipe hunt for which one it is? Which one is it? Go get the excerpts before you say another word. I see you've come this far. Are counsels somehow taught that excerpts are not allowed in our courts? This proves my point that nobody pays any attention to excerpts. We do. We do. Well, we get the record because the excerpts are usually deficient. All right. At base stamp number 655 is a photograph depicting no injuries. This is the one that says exhibit 15. 654 is an exhibit number which says 15, right? Yes. The previous page. And that's the one with the guy bare-chested with the LA tattoo on his chest, right? That's correct. Okay. And that picture was taken immediately that morning, immediately following the assault on staff earlier that morning. So that's to show no injury before this event. Correct. And then we've got another photograph to show injury after the event. Correct. Is that what you're telling us? Yes, at base stamp number 661. That's number 18. Correct. Now, I thought I heard opposing counsel make a very different presentation. Right. And that's why I wanted to use it. And he referenced the transcript page. Can you give me the transcript page again? Base stamp 11 of the October 10th transcript. Which is where on that section of the record? October 10th transcript appears to start at page 174. I'm not sure what page counsel is referring to within that. Well, there's one in volume 3 at page 309. There's 174. I see. It goes from volume 2 to volume 3. So this must be in volume 2 of the excerpts. It appears to be on page, base stamp 183 of volume 2 of the excerpts. Yeah, they're all consecutive. And Mr. Waller has shown a photograph. That's government's exhibit 15. Mr. Waller has shown 15, and what does he say it is? And he says it's taken about 9 in the morning on May 9th. He says, I'm pretty sure it was taken in the morning right after the incident. The incident is the ambiguous term in lines 1 and 2 on 184. Which incident? He's referring to the incident involving the earlier assaults on staff the morning of May 9th. Is that at 9 a.m.? At about 9 a.m. in the morning. And what time was the attack incident, for the lack of a better term? It was in the late evening hours, I think at about 10, 10.30 at night or 11 at night. 10.30 p.m. on the night. So the other side says it's an after-after photo, and you're saying it's a before-after photo. Right. I'm saying there are two exhibits. One was a before showing no injuries from that morning on May 9th, and one was an after showing the injuries at Pond Arrival. And we heard the other side say it's an after, the photo is close to and later on. And you're saying that's not right? Right. Can we give the other side an opportunity to review this? I think we're better. This would be easier to read if instead of using lawyers' words like the incident, they used ordinary English like the fight and being thrown out of the truck. Right. I guess I just would want to make one other correction on a fact that I think was misstated, and that is that what Freeman testified to seeing was McGowan grabbing the inmate he later identified he was able to put together as being Villa, grabbing by the jumpsuit, and then what he saw is Villa go tumbling to the ground, and he saw immediately the injury to his chin, the lacerations to his chin. There was other evidence, again, of the fact that Villa had no injuries prior to being brought over to Central and that he did sustain injuries thereafter. And so obviously the evidence coming together with the injuries were attributable to Defendant McGowan. In addition, Freeman testified that he heard at that point Villa complain of pain to his ribs. Okay. Thank you. Well, we'll give another minute to opposing counsel to just address this one issue about the two exhibits. Photographs. I read the transcript. He said it was a photograph taken after the incident. Honestly, I thought that meant after the alleged assault, especially because Freeman testified. But it says 9 in the morning. And this is on page 183 of the transcript, and if you flip the page and go to 184, it says quite clearly at line 20 that the injury or the incident, which is the ‑‑ I'm sorry, that they were transported at 11 o'clock at night. So whatever happened with McGowan happened, I mean, according to this transcript, not just counsel's presentation, but according to the transcript, McGowan's incident happened at 11 o'clock at night or sometime after 11 o'clock at night. So your earlier argument is mistaken, right? I'm not suggesting any ‑‑ It may well be mistaken. I was confused because it was into the early morning hours of the next day. So the morning of the night was the incident that led to them being transported. They were not transported. The assault by McGowan did not happen until dark on the night. So if it's the morning of the night that that photograph was taken, I am incorrect in my argument. I don't ‑‑ It's one of the good reasons to have the excerpts with you. You can actually read what the words are. Also, though, if you read, Freeman says he saw no injuries on those gentlemen coming down the hallway. If he had that injury coming down the hallway. See, your excerpt is to your brief and your oral argument what your evidence is in a trial to your opening statement. And as you can tell, we don't always look under the covers because it's hard to tell from the briefs sometimes what really happened. I understand. Yeah, whatever the CLE course is that tells counsel, because it happens so often it must be a course out there that says don't bring your excerpts to court. Just don't believe it, you know. There's nothing more important on appeal than bringing it with you. I mean, if you could bring the whole record, but a lot of times the record is huge. But the excerpts are the parts of the record that counsel tell us bear on the issues on appeal. And we're going to talk about them. We talk about them. We look at them. And if you have something that, like your argument, relies on actual exhibits on the record, not every case does, but this one does, you had better be able to point to where it is and be able to have us read along with you the transcript. I understand. Judge Kosinska is right. This happened yesterday. A lawyer told us something happened when we looked in the record. It didn't. And then he ended up apologizing. My error is even more basic in that I grabbed the stack of transcripts instead of the stack of the excerpt, which is now sitting back on my desk laughing at me. What I do, because I do that kind of thing, is I put things by the door so I stumble over them on my way to the car. You have to know your handicaps. You have to know your superfluous. All right, counsel. Thank you very much. And we've taken a lot of your time, but this has been very helpful. I appreciate it. Okay, so I will stand some minutes. Well, next. You should put them in the car the night before. That's the other way. Put them in the car. Some sort of physical. Sweeney versus Yates.
judges: Kozinski, Trott, Kleinfeld